**THIS ORDER IS SIGNED AND ENTERED.**

Dated: September 23, 2021



*Rachel Blise* (signature)
**Hon. Rachel M. Blise**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| In re: | |
| Mark & Andrea Binkley, | Case No. 21-11180-rmb |
| Debtors. | Chapter 13 |

---

### MEMORANDUM DECISION AND ORDER

Section 109(g)(2) of the Bankruptcy Code provides that an individual debtor who voluntary dismisses his or her case following the filing of a request for relief from the automatic stay may not file another bankruptcy case until 180 days have passed.  Debtors Mark and Andrea Binkley (the "Debtors") were debtors in a chapter 13 case filed in 2019.  Their mortgage creditor requested relief from the automatic stay in the previous case, and the Debtors sought and obtained voluntary dismissal of that case on May 7, 2021 after the creditor was granted relief from the stay.  The Debtors then commenced this case just a few weeks later, after fewer than 180 days had passed.  The Court concludes that § 109(g)(2) compels the Court to dismiss this case because the Debtors are ineligible to be debtors.

### BACKGROUND

The Debtors previously filed a voluntary chapter 13 petition in this district on March 11, 2019.  *In re Binkley*, Case No. 19-10652 (W.D. Wis.) (the "2019 Case").  Pursuant to a

confirmed chapter 13 plan, the Debtors were required to make direct monthly payments to their mortgage creditor, Lakeview Loan Servicing ("Lakeview"). On December 23, 2019, Lakeview filed a motion for relief from stay, asserting that the Debtors had failed to make several post-petition mortgage payments. The motion was resolved with an agreed order entered on January 27, 2020. Lakeview renewed its motion on December 15, 2020, asserting that the Debtors had again failed to make post-petition mortgage payments. The motion was again resolved with an agreed order entered on February 1, 2021, and the order permitted Lakeview to obtain immediate relief from stay if the Debtors failed to comply with its terms.

On April 12, 2021, Lakeview filed an affidavit averring that the Debtors had made the required payments, and on April 13, 2021, the court entered an order granting Lakeview relief from the stay. On May 6, 2021, the Debtors filed a motion to voluntarily dismiss the 2019 Case pursuant to § 1307(b). The court entered an order dismissing the case the next day.

On June 1, 2021, twenty-five days after the 2019 Case was dismissed, the Debtors commenced this case by filing another chapter 13 petition. (ECF No. 1.) Two days later, the Debtors filed a Motion to Extend Automatic Stay pursuant to 11 U.S.C. § 362(c)(3)(B). (ECF No. 9.) Lakeview objected to the Debtors' motion to extend the stay, arguing, among other things, that the Debtors are ineligible to be debtors under § 109(g)(2). (ECF No. 18.)

On June 15, 2021, the Debtors filed the Affidavit of Debtor Mark A. Binkley to provide evidentiary support for their motion to extend the stay. (ECF No. 20.) Mr. Binkley averred that the Debtors had fallen behind on their mortgage payments due to a lapse in income at the end of 2019 and unanticipated car repairs, though Mr. Binkley did not say when those repairs had occurred. (*Id.*) Mr. Binkley further averred that the Debtors had increased their income and were able to fund both a chapter 13 plan and direct payments to Lakeview. (*Id.*)

The Court held a hearing on the Debtors' motion on July 1, 2021. At the hearing, counsel for Lakeview and the Debtors reported that the parties had resolved Lakeview's objection, and that the Debtors had agreed to timely pay all mortgage payments for the duration of the chapter 13 plan, with Lakeview to be entitled to immediate relief from the automatic stay if the Debtors failed to make any mortgage payments. The Court found that the Debtors had sufficiently demonstrated that the filing of this case was in good faith as to all creditors and granted the Debtors' motion to continue the stay.

Despite the Court's finding as to the Debtors' motion, the Court concluded that the parties could not resolve the § 109(g)(2) issue by agreement and questioned whether the Debtors were in fact eligible to be debtors under the Bankruptcy Code. The Court invited the Debtors and other interested parties to submit briefing on the issue. The Debtors submitted a brief arguing that the Court has discretion to allow them to be debtors notwithstanding that they voluntarily dismissed the 2019 Case after Lakeview filed a motion and was granted relief from the automatic stay. (ECF No. 29.) No other party submitted a brief.

## DISCUSSION

Section 109(g) of the Bankruptcy Code provides in pertinent part:

> [N]o individual . . . may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if –
> . . .
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g)(2). Congress enacted this provision in 1984 to curb abusive repeat filings by debtors intending to prevent creditors from acquiring relief from the automatic stay. *Grossman v. Beal (In re Beal)*, 347 B.R. 87, 90 (E.D. Wis. 2006) (citing 130 Conf., Rec. 20, 088 (1984)).

Although the language appears straightforward, courts are divided on the proper application of the statute based on interpretation of the word "following." Generally, courts address § 109(g)(2) in one of three ways: (1) the mandatory approach, (2) the causal connection approach, or (3) the discretionary approach. *See generally In re Durham*, 461 B.R. 139, 141 (Bankr. D. Mass. 2011); *In re Gibas*, 543 B.R. 570, 593 (Bankr. E.D. Wis. 2016).

The mandatory approach dictates that the meaning of § 109(g)(2) is unambiguous. In this view, the term "following" is strictly temporal and means "after" or "subsequent to." *E.g.*, *Gibas*, 543 B.R. at 593 ("The sequential approach clearly defines a debtor's legal rights going forward, furthers the purpose of section 109(g)(2), and is an efficient use of judicial and party resources. The best way to read 'following' is 'after.'"). Thus, if a debtor voluntarily dismisses his or her case at any time after a creditor has filed for relief from stay, a subsequent case filed within 180 days must be dismissed. *Id.* Courts need not address the debtor's motives in dismissing the initial case, because the statute clearly renders the debtor ineligible. *See In re Stuart,* 297 B.R. 665, 668 (Bankr. S.D. Ga. 2003) ("Congress intended to make debtors who dismiss and refile in the face of a motion for relief ineligible, regardless of their subjective state of mind or intent, and did not intend for a bankruptcy court to condition § 109(g)(2)'s application upon a judicial determination regarding a debtor's intent."). "While this outcome may seem severe, it is mitigated by the fact that the statutory prohibition can only be invoked when the debtor voluntarily elects to dismiss his or her own case." *In re Andersson*, 209 B.R. 76, 78 (B.A.P. 6th Cir. 1997).

Courts that employ the causal connection approach hold that the term "following" means "as a result of." *E.g.*, *In re Payton*, 481 B.R. 460, 466 (Bankr. N.D. Ill. 2012) ("In this context, causation is the focus of the relationship, not simply chronology."). Under this approach, a

debtor is ineligible to proceed in their subsequent case only if the court finds that the debtor voluntarily dismissed their case *because of* a creditor's motion for relief in the prior case. "If this examination [of the circumstances surrounding the creditor's motion for relief from stay and the Debtor's motion to dismiss] reveals that the Debtor was acting in response to the motion for relief from stay, then the Debtor is barred by the terms of section 109(g)(2) from being a debtor under Title 11 for 180 days." *In re Duncan*, 182 B.R. 156, 159 (Bankr. W.D. Va. 1995); *see also In re Copman*, 161 B.R. 821, 823 (Bankr. E.D. Mo. 1993) ("The word 'following' in the statute requires some relationship between the timing of the § 362 request and the voluntary dismissal.").[1]

Some courts have concluded that the statute affords them discretion to allow a case to proceed, even if a debtor voluntarily dismisses and then re-files within 180 days after and as a result of a creditor's motion for relief from stay. *E.g.*, *Home Sav. Of Am. F.A. v. Luna (In re Luna)*, 122 B.R. 575, 577 (B.A.P. 9th Cir. 1991); *In re Santana*, 110 B.R. 819, 822 (Bankr. W.D. Mich. 1990). These courts reason that barring debtors under § 109(g)(2) may produce an inequitable, unfair, or absurd result. *See In re Hutchins*, 303 B.R. 503, 509 (Bankr. N.D. Ala. 2003) ("[T]he automatic, strict, mandatory or mechanical application of 11 U.S.C. § 109(g)(2) in every case could and would lead to absurd results in some if not many Chapter 13 cases. Thus, this Court will look at the facts of this case to determine if the results are absurd if that section is strictly applied.").[2]

---

[1] Some courts apply a version of the causal connection approach referred to as the "pending motion" approach, which requires that the request for relief from stay be pending at the time the debtor requests dismissal. *E.g.*, *In re Jones,* 99 B.R. 412, 413 (Bankr. E.D. Ark. 1989) (holding that § 109(g)(2) "applies only if there is a contested matter pending at the time of the voluntary dismissal").

[2] Some courts that claimed to apply the discretionary approach seem to have applied the causal connection approach. *See In re Howard*, 311 B.R. 230 (Bankr. E.D. Wis. 2004) (examining whether the dismissal and re-filing was caused by the motion for relief from stay); *In re Patton*, 49 B.R. 587 (Bankr. M.D. Ga. 1985) (determining that § 109(g)(2) was inapplicable because the creditor had already obtained

In determining which of these three interpretive approaches to apply, this Court is guided by the Supreme Court's instruction that "courts must presume that a legislature says what it means and means what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242 (1989) (internal quotation marks omitted). The canon allowing courts to depart from application of otherwise plain statutory language should be employed only "where the result of applying the plain language would be, in a genuine sense, absurd, i.e., where it is quite impossible that Congress could have intended the result . . . and where the alleged absurdity is so clear as to be obvious to most anyone." *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 470-71 (1989) (Kennedy, J., concurring in the judgment).

The language of § 109(g)(2) is largely plain and unambiguous; the issue in this case hinges on the meaning of the word "following." The American Heritage Dictionary defines "following" multiple ways. Two sets of related definitions are relevant here. The first definition is "[t]o come or go after; proceed behind," and the eighth definition is "[t]o come after in order, time, or position." *Follow*, THE AM. HERITAGE DICTIONARY OF THE ENG. LANGUAGE (last visited Sept. 22, 2021) https://ahdictionary.com/word/search.html?q=follow. These definitions support the mandatory approach discussed above so that a debtor is barred from filing if a case was voluntarily dismissed any time after the filing of a motion for relief from stay. The ninth

---

all the relief it had sought in its motion for relief from stay and the stay would not be re-imposed on the same creditor with a new filing). Application of the causal connection approach, which is an approach supported by the language of the statute, alleviates the concern that a debtor may be barred from re-filing when a voluntary dismissal was precipitated by something other than the creditor's motion for relief from stay.

definition is "To bring something about at a later time than or as a consequence of" and the tenth definition is "To occur or be evident as a consequence of." *Id.* These definitions support the causal connection approach, allowing the court to determine whether the voluntary dismissal of the prior case was because of or related to the filing of a motion for relief from stay.

In contrast, the discretionary approach used by some courts and advocated by the Debtors is not supported by the definition of "following" or by any other language in the statute. Rather, the approach requires adding language not present in the statute, such that § 109(g)(2) does not operate as a bar as long as the debtor acted in good faith or some other equity favors allowing the debtor's second case to proceed.

In urging the Court to apply the discretionary approach, the Debtors rely heavily on *In re Hutchins*, 303 B.R. 503, 505 (Bankr. N.D. Ala. 2003). In *Hutchins*, the debtor twice fell behind on her mortgage payments, both times the mortgage creditor requested relief from the stay, and both times the parties agreed to terms resolving the creditor's motion. When the debtor fell behind a third time, the creditor was automatically granted relief from stay pursuant to the agreed order. The debtor then requested and obtained a voluntary dismissal, and she filed a second chapter 13 petition two days later. *Id.* The Court found that the debtor had filed the second case in good faith, she was current on payments to the Trustee, she proposed to pay 100% of all unsecured claims, and there was substantial equity in the home. *Id.* at 509-10. Despite concluding that the statute is unambiguous, the *Hutchins* court applied the discretionary approach to decline dismissal, reasoning that mechanistic application of § 109(g)(2) was unwarranted and would lead to an absurd result because it would exclude the sort of honest but unfortunate debtor that the Bankruptcy Code was meant to protect. *Id.*

7

This Court disagrees with the *Hutchins* court that the result is or may be absurd when § 109(g)(2) is applied as written.  Congress has the sole power to prescribe who can and cannot be a debtor under the Bankruptcy Code.  It is not the purview of this Court to reshape a statute that may be under-inclusive or over-exclusive in certain applications.  *See In re Richardson*, 217 B.R. 479, 493 (Bankr. M.D. La. 1998) ("It is not within the power of the bankruptcy courts, themselves creatures of Congressional act, to question the wisdom of a Congressional act that determines who may be a debtor in bankruptcy, through the conjuring maneuver of decrying, as absurd, consequences which are (to some) felt to be unfortunate.").  Indeed, the statute is invoked only when the debtor voluntarily *chooses* to dismiss their own case, as the debtor in *Hutchins* did.[3]  "It is reasonable to conclude that Congress recognized that when a debtor chooses to use that tool to dismiss his case after a motion for relief has been filed, and then later files a new case, the debtor has calculated that dismissal and refiling benefit him more than continuing the first case or waiting for the trustee or creditor to file a motion to dismiss." *Gibas*, 543 B.R. at 589.

The Court is especially reticent to infer the sort of good faith test applied by the *Hutchins* court when none is described in the statute, because Congress has expressly directed bankruptcy courts to consider a debtor's good faith in other sections of the Bankruptcy Code.  For example, section 362(c)(3)(B) requires the Court to find that a case was filed in good faith before extending the automatic stay in certain cases.  11 U.S.C. § 362(c)(3)(B).  And the Court is

---

[3] The *Hutchins* court was concerned that some debtors may "game the system" by defaulting on their payments to the chapter 13 trustee and goading the trustee to seek dismissal so the dismissal is not voluntary.  303 B.R. at 508.  But the debtor has no control over the timing of such an involuntary dismissal, and the creditor that obtained relief from the stay would be free to exercise its rights and remedies in the interim.  Section 109(g)(2) applies to situations where the debtor seeks dismissal voluntarily, putting the debtor in control of the timing and potentially preventing the creditor from exercising its rights with a quick re-filing that re-imposes the stay.

required to find that "the action of the debtor in filing the petition was in good faith" when confirming a chapter 13 plan.  11 U.S.C. § 1325(a)(7).

The Court declines to apply the discretionary approach because it is not support by the plain language of the statute or any other cannon of statutory construction.  That leaves the Court to decide whether to apply the mandatory approach or the causal connection approach, but that decision can be left for another day.  Under either interpretation, § 109(g)(2) mandates dismissal of this case.

There should be no dispute that the facts here satisfy the mandatory approach; that is evident from the docket of the 2019 Case.  Lakeview filed a motion for relief from stay in that case on December 23, 2019 and renewed the motion on December 15, 2020.  The Debtors requested and obtained voluntary dismissal of the 2019 Case on May 7, 2021, after Lakeview filed its motion.  Because the voluntary dismissal was subsequent to the filing of the Lakeview's motion for relief, the mandatory approach to interpreting § 109(g)(2) prevents them from re-filing for 180 days.

There is also sufficient evidence that the Debtors' voluntary dismissal of the 2019 Case was a consequence of Lakeview's motion for relief from stay.  The order granting Lakeview's motion was entered on April 13, 2021, and the Debtors filed their motion to dismiss just over three weeks later.  The Debtors then filed this case just over three weeks after that, on June 1, 2021.  In his affidavit submitted in support of the Debtors' motion to extend the automatic stay, Mr. Binkley averred that the Debtors were not behind on their chapter 13 plan payments at the time of the dismissal but that they were behind on their direct payments to Lakeview.  (ECF No. 20 at ¶ 3.)  Mr. Binkley also averred that the Debtors anticipate they will not fall behind on their mortgage payments in the future due to a change in their employment.  (*Id.* at ¶ 5.)  The Court

9

has no trouble concluding that the reason for the Debtors' voluntary dismissal of the 2019 Case was to quickly file a new case to re-impose the automatic stay and prevent Lakeview from exercising its rights and remedies based on the Debtors' default. These are exactly the circumstances that § 109(g)(2) was designed to address. The statute therefore prevents the Debtors from being debtors in a bankruptcy proceeding until 180 days have passed after the dismissal of the 2019 Case.

There remains a question of when the § 109(g)(2) bar expires in light of the pendency of this improperly filed case. The Court could leave that issue for resolution if and when the Debtors choose to file another bankruptcy petition, but the Court believes the Debtors are better served by addressing the issue now so they do not file yet another case in which they are ineligible to be debtors.

The Court concludes that the 180-day period described in § 109(g)(2) is tolled during the pendency of an improperly filed case. The Court is persuaded by the reasoning of the court in *In re Wilson*, 85 B.R. 72 (Bankr. N.D. Ill. 1988):

> Here, the Order of Dismissal was entered in the first case on November 30, 1987. If the running of the 180 day bar following dismissal of the first case is not tolled while this case is pending, the Debtor will be able to file a third case on May 30, 1988, only a month and a half away, without violating the prohibition of Section 109(g)(2) from the first case. In the meantime, the Debtor has had the benefit of the automatic stay during the time this case was wrongfully pending.
>
> It would appear that any debtor's attorney worth his salt could file a case in the face of Section 109(g)(2) and postpone resolution of the 109(g)(2) issue for all or most of 180 days, thereby nullifying the Congressional intent underlying Section 109(g)(2). Section 109(g)(2) is thereby transformed from a provision to eliminate abuse and reduce creditor harassment, as Congress intended, to a provision which invites even greater abuse and harassment.
>
> The Court concludes, therefore, that where a Debtor files a case in violation of Section 109(g)(2), the running of the 180 day prohibition of

> Section 109(g)(2) is tolled from the time of filing the case until it is dismissed pursuant to Section 109(g)(2).

*Id.* at 73.[4] *See also In re Beal*, 347 B.R. 87, 89 (E.D. Wis. 2006) ("[T]he general rule [is] that the pendency of a wrongfully filed petition during the 180 days tolls that period to prevent the debtor from wrongly benefiting from the automatic stay. . . . Thus, by refiling, the [debtors] tolled the 180 day period.").

Twenty-five days passed between the dismissal of the 2019 Case on May 7, 2021 and the filing of this case on June 1, 2021. Accordingly, the Debtors must wait an additional 155 days before they may file another bankruptcy case.

## CONCLUSION

For the foregoing reasons, the Debtors are ineligible to be debtors pursuant to 11 U.S.C. § 109(g)(2). Accordingly, IT IS HEREBY ORDERED that this case is dismissed and the Debtors are prohibited from re-filing another bankruptcy case until February 25, 2022.

### #

---

[4] At least one court has fashioned an equitable exception to the tolling requirement in the face of a creditor that sat on its rights for ten months after the debtor filed a second case that was improper under § 109(g)(2). *In re Carty*, 149 B.R. 601, 603 (B.A.P. 9th Cir. 1993). Even if the Court could apply such an exception, it is not warranted here because the § 109(g)(2) issue was promptly brought to the Court's attention.

11